USDC - GREENBELT
'24 APR 17 PM1:58

✓ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED
3:16 pm, Apr 17 2024
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

KOH: USAO 2022R00301

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | *    **CRIMINAL NO.** ∂4-CR-00124-DLB |
| | * |
| **EJIKE CHIJOKE ASIEGBUNAM,** | *    **(Conspiracy, 18 U.S.C. § 371;** |
| | *    **Forfeiture, 18 U.S.C. § 981(a)(1)(C),** |
| **Defendant** | *    **21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))** |
| | * |
| | * |

**\*\*\*\*\*\*\***

## INFORMATION

### COUNT ONE
### (Conspiracy)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

### Introduction

1.      State Boards of Nursing were established to protect the public's health by overseeing and assuring the safe practice of nursing.  Boards of Nursing achieved this mission by establishing the standards for safe nursing care and issuing licenses authorizing the practice of nursing.  Once a license was issued, the Boards of Nursing held licensees to provisions defined in state laws and, when necessary, acted against the licenses of those nurses who exhibited unsafe nursing practices.

2.      The purpose of a professional license was to protect the public from harm by setting minimal qualifications and competencies for safe entry-level practitioners.  Nursing was regulated because it is one of the health professions that poses a risk of harm to the public if practiced by someone who is unprepared and/or incompetent.

3.     Typical components of licensure to be a Registered Nurse ("RN") or a Licensed Practical Nurse ("LPN") included, among other things, verification of graduation from an approved pre-licensure nursing program, verification of successful completion of the National Council Licensure Examination ("NCLEX"), a criminal background check, and in some states—including New York—continuing education credits.

4.     Once a nursing license was obtained in one jurisdiction, various state reciprocity agreements simplified the process to obtain a license and practice in another state.

5.     The Maryland Board of Nursing ("MBN") was the department of the Maryland state government responsible for regulating the practice of nurses in Maryland, including applications for licensure.

**The Defendant and Relevant Individuals and Entities**

6.     The Defendant, **EJIKE ASIEGBUNAM** ("**ASIEGBUNAM**"), was a resident of Maryland and the owner/operator of Nursing School 2, a purported nursing school located in Florida.  **ASIEGBUNAM** also operated Business 1, a purported National Council Licensure Examination ("NCLEX") review school, located in Maryland.  Nursing School 2 was not approved to operate as a nursing program in Maryland.  Nursing School 2 was no longer permitted to enroll new students after September 8, 2021.

7.     **Musa Bangura** ("**Bangura**") was a resident of Virginia and the owner of Nursing School 1.  Nursing School 1 was a nursing school licensed by the Virginia Board of Nursing ("VBN") in or around July 2008.  In or around June 2013, Nursing School 1's license was terminated by the VBN due to the low NCLEX passage rates of its graduates.

2

8.      **Individual 1** was a resident of Maryland and the owner/operator of Nursing School 3, which operated in Virginia from approximately 2011 through 2014, when Nursing School 3 was shut down due to the low NCLEX passage rates of its graduates.

9.      **Johanah Napoleon** ("**Napoleon**") was a resident of West Palm Beach County, Florida, and the President of Palm Beach School of Nursing, LLC.  Palm Beach School of Nursing was a nursing school licensed by the Florida Board of Nursing on or about June 22, 2012.  Palm Beach School of Nursing's license was terminated on or about May 2, 2017, due to the low NCLEX passage rate of its graduates.

## The Conspiracy and Its Object

10.      Beginning in or around 2018, and continuing through at least in or around 2021, in the District of Maryland and elsewhere, the defendant,

### EJIKE CHIJOKE ASIEGBUNAM,

did knowingly and willfully combine, conspire, confederate, and agree with **Bangura**, **Individual 1**, **Napoleon,** and others known and unknown to the United States Attorney to commit an offense against the United States, specifically, wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and material omissions (the "scheme to defraud"), and, for the purpose of executing and attempting to execute the scheme to defraud, to cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy and Scheme to Defraud

It was part of the conspiracy that:

3

11.     Beginning in or around 2018, and continuing through at least in or around 2021, **ASIEGBUNAM** and his co-conspirators conspired to provide purchasers with false and fraudulent RN degrees from Nursing School 2.

12.     **ASIEGBUNAM** and others provided false and fraudulent diplomas and educational transcripts from Nursing School 2 which falsely represented that the purchasers of the documents had attended Nursing School 2 and completed the necessary courses and/or clinical training at Nursing School 2 to obtain RN nursing degrees (collectively, the "false and fraudulent Nursing School 2 documents").

13.     In total, **ASIEGBUNAM** sold false and fraudulent Nursing School 2 documents in exchange for at least $1,390,332.

14.     Between in or around February 2018 and December 2018, **ASIEGBUNAM** conspired with **Napoleon** to sell false and fraudulent RN degrees from Palm Beach School of Nursing in Florida to individuals located in Maryland and New York.

15.     In total, as a result of the scheme, **ASIEGBUNAM** received approximately $272,400 from Palm Beach School of Nursing.

### Overt Acts

16.     In furtherance of the conspiracy and to achieve its purposes, **ASIEGBUNAM** and his co-conspirators committed the following overt acts, among others, in the District of Maryland and elsewhere:

a.     **ASIEGBUNAM** and his co-conspirators recruited potential purchasers in the District of Maryland and elsewhere, who were looking to obtain nursing degrees.

b.     **ASIEGBUNAM** sold purchasers false and fraudulent Nursing School 2 documents, which **ASIEGBUNAM** signed as the owner of Nursing School 2.

4

        c.      Students paid **ASIEGBUNAM** and others to complete required prerequisites to enter the nursing program at Nursing School 2 for them.

        d.      **ASIEGBUNAM** caused purchasers to submit payment to him for the false and fraudulent Nursing School 2 documents via cash and/or check. **ASIEGBUNAM** generally charged purchasers between $15,000 and $22,000 for false and fraudulent Nursing School 2 documents. **ASIEGBUNAM** also generally charged approximately $5,000 to complete online prerequisites.

18 U.S.C. § 371

5

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1.     Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction under Count One of this Information.

### Wire Fraud Forfeiture

2.     Upon conviction of the offense alleged in Count One of this Information, the defendant,

### EJIKE CHIJOKE ASIEGBUNAM,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, a forfeiture money judgment in the amount of $1,662,732 in U.S. Currency equal to the proceeds obtained by the defendant as a result of the scheme to defraud.

### Substitute Assets

3.     If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above.


18 U.S.C. § 981(a)(1)(c)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)


Date: April 17, 2024                         Erek L. Barron

Erek L. Barron
United States Attorney